IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SEAN WRIGHT,<br><br>                Petitioner,<br><br>vs.<br><br>STATE OF ALASKA,<br><br>                Respondent. | No. 3:18-cv-00056-JKS<br><br>MEMORANDUM DECISION |

      Sean Wright, a state prisoner now represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254, dated February 27, 2018. In the Petition, Wright challenges his 2009 conviction for sexually abusing two young girls on the ground that his speedy trial rights were violated when the State of Alaska filed a felony information against him in November 1999 but did not arrest or indict him on the charges until almost five years later, and he did not proceed to trial on the charges until almost ten years later. Respondent has answered, and Wright has replied.

                              I. BACKGROUND/PRIOR PROCEEDINGS

      In November 1999, Wright was charged in a felony information with sexually abusing two young girls. On direct appeal of his conviction, the Alaska Supreme Court laid out the following facts underlying the charges against Wright and the procedural background of his case:

-1-

### A. Facts

The State began investigating Wright in February 1999 after receiving a report that Wright had sexually abused his eleven-year-old stepdaughter, K.A. K.A. and her mother, Evelyn Wright, had confronted Wright about the abuse, and Wright moved out of the home, at which point they informed the police. Alaska State Trooper Investigator Ruth Josten interviewed K.A. and Evelyn on February 16 and 17, 1999. Evelyn indicated that Wright may have also abused another child, M.C., the daughter of his prior long-term partner. On March 4, Josten made contact with M.C., who confirmed that Wright had sexually abused her a decade prior.

When the investigation into the sexual abuse began, Wright left the state. Initially, he stayed with his brother in Arkansas. He subsequently decided to leave Alaska permanently and, over the next five years, worked various jobs in Arkansas, Mississippi, Alabama, Georgia, Oklahoma, Tennessee, and Minnesota.

At first, Wright stayed in contact with Evelyn via phone and letter. He called Evelyn on February 28 and March 1, 1999, but would not say where he was. Josten placed a phone trap on Evelyn's phone on March 2. With the phone trap, the Matanuska Telephone Authority identified phone calls from Wright to Evelyn on March 9, 10, and 11 as coming from Arkansas. In phone calls between February 28 and April 1, Wright expressed concern that the calls might be monitored by police, checked to see whether a warrant had been issued for him, indicated that he was attempting to retain counsel, and expressed his desire to achieve a non-criminal resolution of the allegations against him.

In mid-March 1999, he returned to Alaska. He stayed with a friend in Anchorage except for the weekend of March 20-21, which he spent with Evelyn in Wasilla. While back in Alaska he sold land to a friend, arranged to sell his truck, and placed his personal belongings in storage. On March 22 he formally resigned from his job and took a "red-eye" flight that night back to Arkansas. While Wright was waiting for his flight out of Alaska, he wrote to a friend:

> I don't know what's going on but I got a bad feeling, time to travel while I can. Note to trust no one, I won't call for a long time and don't know where I'm going yet. Have to stick to myself and stay away from family and friends till my attorney knows what's happening and how to deal with it. So I act like a termite for a while and work where I can to pay lawyer and survive.

Josten did not learn that Wright had been in Alaska until May 1999. Wright did not return to Alaska until after he was arrested in Minnesota in 2004.

Wright telephoned Evelyn frequently for several months after permanently leaving the state, but according to Evelyn, this regular contact ended after a warrant was issued. On May 6, 1999 Wright wrote to Evelyn to send her an address where he could receive mail. The address was his brother's in Vilonia, Arkansas, but it was clear this was only a forwarding address. He wrote, "Bill will get my mail to me were [sic] I'm at." This was the only address Evelyn and Josten had for Wright.[FN1] The record reflects that Wright also occasionally received mail at several mailing addresses in Russellville, Arkansas, where he at times lived with a girlfriend.[FN2] And Wright kept his brother apprised of where he was working.

> FN1. Evelyn used the Vilonia address to contact Wright in order to obtain a dissolution of their marriage. The Palmer superior court did so as well. Wright waived his right to appear in the dissolution proceedings and signed the dissolution paperwork before a notary in Arkansas.
>
> FN2. At one of the Russellville addresses, Wright received a summons from a

-2-

law firm about a case in Juneau regarding his overdue student loans. He also gave a Russellville address to the Alaska Bureau of Vital Statistics when he made a request for a death certificate.

Josten completed her investigation in June 1999. She forwarded the information she had gathered to the district attorney's office for review, and, aware that Wright had fled the state, requested that an extraditable arrest warrant issue. Her request was declined, "inexplicably," according to the superior court.

Five months later, in November 1999, the State filed a criminal information with the court charging Wright with eleven counts of sexual abuse of a minor. On November 16, 1999, an arrest warrant was issued for Wright. But the warrant was non-extraditable, so it was not placed in the FBI's National Crime Information Center system.

In the summer of 1999, Josten was reassigned. Between then and 2004, she periodically checked for information about Wright using databases available to Alaska State Troopers, but she made no other efforts to locate Wright.

Wright obtained an Arkansas driver's license in 2001. And between 1999 and 2004 he worked at a number of nuclear facilities requiring security clearance. Had his warrant been entered into the National Crime Information Center database, his employers would have discovered it.

On September 17, 2004, almost five years after the felony information was filed, Alaska State Trooper Sergeant Iliodor Kozloff received an inquiry from an employer in Minnesota about Wright.[FN3] Sgt. Kozloff confirmed there was an arrest warrant for Wright, but discovered that it was non-extraditable. He then contacted the district attorney's office, which decided to obtain an extraditable warrant. Wright was subsequently arrested and brought back to Alaska.

> FN3. According to the State, the personnel officer who made the inquiry was suspicious since "it appeared that Mr. Wright wasn't providing any residences since living in Alaska."

On October 3, 2004, Wright was arraigned on the charges filed in 1999. On October 12, 2004, a grand jury indicted Wright on eighteen counts of sexual abuse of a minor covering the abuse of K.A., M.C., and a third girl, T.W.[FN4]

> FN4. The State later agreed to dismiss the counts pertaining to the abuse of T.W. on statute of limitations grounds.

### B. The Superior Court Proceedings

In August 2005 Wright filed a motion to dismiss the indictment claiming that the delay in prosecuting him violated his due process and speedy trial rights. After extensive briefing and an evidentiary hearing spread over seven non-consecutive days, Superior Court Judge Philip Volland denied the motion in a 13-page written opinion. . . .

With respect to the due process claim, the court determined that Wright had failed to show actual prejudice or unreasonable delay, and found Wright largely responsible for the delay.

As to the speedy trial claim, the court implicitly determined that the speedy trial clock began to run when the information was filed in November 1999. The court then applied a four-factor balancing test to determine whether the delay deprived Wright of his right to a speedy trial. The test, laid out by the Supreme Court of the United States in *Barker v. Wingo*, requires a court to consider: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the speedy trial right, and (4) prejudice to the defendant.[FN5] The superior court found that none of the latter three factors favored

Wright.

> FN5. 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *State v. Mouser*, the court of appeals used this test in evaluating a speedy trial claim arising under the Alaska Constitution. 806 P.2d 330, 340 (Alaska App. 1991).

Wright unsuccessfully sought interlocutory review in state and federal courts.[FN6] He also brought numerous other motions before the case finally came to trial in May 2009. Wright renewed his speedy trial motion just prior to trial. Superior Court Judge Michael Spaan denied this motion, relying on Judge Volland's decision. Before the jury began deliberations Wright again renewed his motion to dismiss on speedy trial grounds. Judge Spaan again denied this motion. The jury convicted Wright on eight counts of sexual abuse of a minor involving M.C. and five counts involving K.A. After Wright was sentenced, he appealed to the court of appeals.[FN7]

> FN6. *Wright v. State*, 347 P.3d 1000, 1005 & n.3 (Alaska App. 2015).
>
> FN7. *Id.* at 1005.

### C. The Court Of Appeals' Decision

The court of appeals held that Wright's speedy trial claim under the federal constitution was without merit.[FN8] The court explained that federal courts have held that such claims do not begin to run until either an arrest or the filing of formal charges in a court having jurisdiction to try the accused, whichever comes first.[FN9] Since the November 1999 information was filed in the district court, which does not have jurisdiction to try felonies, the federal speedy trial right did not attach until Wright's arrest in September 2004.[FN10] Wright made no claim that the post-arrest delay violated his rights. He therefore had no viable federal speedy trial claim.[FN11]

> FN8. *Id.* at 1005-06.
>
> FN9. *Id.* (citing 5 WAYNE R. LAFAVE, JEROLD H. ISRAEL, NANCY J. KING & ORIN S. KERR, CRIMINAL PROCEDURE § 18.1(c), at 110 (3d ed. 2007)).
>
> FN10. *Id.* at 1006.
>
> FN11. *Id.*

But the court held that Wright's state speedy trial right attached when the felony information was filed in November of 1999.[FN12] The court based its holding in part on the court of appeals' decision in *State v. Mouser*[FN13] and in part on this court's decision in *Yarbor v. State*.[FN14]

> FN12. *Id.* at 1006-07.
>
> FN13. 806 P.2d 330 (Alaska App. 1991).
>
> FN14. 546 P.2d 564 (Alaska 1976).

Turning to the trial court's decision, the court of appeals found that the trial court

-4-

had misapplied the four-factor Barker test.<sup>FN15</sup> According to the court of appeals, the trial court erred in finding Wright partially responsible for the delay because after he left Alaska he "was not hiding out, and the State had avenues of locating him" that likely would have been productive.<sup>FN16</sup> Further, the trial court should not have faulted Wright for failing to assert his speedy trial right because he was unaware that charges had been filed.<sup>FN17</sup> Moreover, the court of appeals held that since the lengthy delay was the responsibility of the State, a presumption of prejudice arose and additional findings were required as to whether the State had met its burden of rebutting the presumption or showing extenuating circumstances.<sup>FN18</sup>

> FN15. *Wright*, 347 P.3d at 1007-09; *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
>
> FN16. *Wright*, 347 P.3d at 1008.
>
> FN17. *Id.* at 1009.
>
> FN18. *Id.* at 1990-11.

The court of appeals noted that pretrial determinations of speedy trial claims are necessarily provisional because prejudice can be better evaluated after a trial, so it instructed the superior court to apply the four-factor test to the whole period between the filing of the information and the trial.<sup>FN19</sup> The court suggested that the pre-arrest delay, which it found to be the responsibility of the State, might be counterbalanced by the post-arrest delay, if found to be the responsibility of Wright.<sup>FN20</sup> The court further suggested that Wright's post-arrest litigation conduct might indicate that he was not actually interested in a speedy trial.<sup>FN21</sup>

> FN19. *Id.* at 1010-11.
>
> FN20. *Id.* at 1011.
>
> FN21. *Id.* at 1009, 1011 (citing *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986)).

The State filed a petition for review to this court contending that the speedy trial time should have run from Wright's 2004 arrest or indictment, rather than from the 1999 information. After oral argument we ordered supplemental briefing on whether the court of appeals erred in attributing the pre-arrest delay to the State rather than, as the superior court did, primarily to Wright's flight from the state once he realized he was under investigation.

*State v. Wright*, 404 P.3d 166, 168-71 (Alaska 2017).

In a reasoned, published opinion issued on September 22, 2017, the Alaska Supreme Court ultimately concluded that "a defendant becomes formally accused for speedy trial purposes under the Alaska Constitution not just upon indictment or arrest but also when the State files an information charging the defendant with a crime." *Id.* at 174. It nonetheless ruled

-5-

against Wright by finding that the superior court did not err in placing primary responsibility for the pre-arrest delay upon Wright. *Id.* at 178. The Supreme Court thus concluded that the superior court correctly decided that Wright was not denied his right to a speedy trial under the Alaska Constitution. *Id.* at 180.

Wright then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on February 25, 2018. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A). Wright concurrently moved for the appointment of counsel, which this Court, through a previously-assigned district court judge, granted. Docket Nos. 3, 5. Counsel filed an Amended Petition ("Petition;" Docket No. 16), which is before the undersigned judge and ripe for adjudication.

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Wright argues that the Alaska Supreme Court unreasonably applied clearly-established Supreme Court authority, *Barker v. Wingo*, 92 S. Ct. 2182 (1972), when it denied his federal speedy trial and due process claims in its decision affirming Wright's conviction and sentence.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

-6-

Case 3:18-cv-00056-SLG   Document 32   Filed 05/08/19   Page 6 of 11

relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

To proceed under § 2254, a petitioner must "be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *See* 28 U.S.C. §§ 2241(c), 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). A petitioner who files a habeas petition after he

-7-

Case 3:18-cv-00056-SLG   Document 32   Filed 05/08/19   Page 7 of 11

has fully served his sentence and who is not subject to court supervision is not "in custody" for the purposes of this Court's subject matter jurisdiction and his petition is therefore properly denied. *See Maleng*, 490 U.S. at 492. The custody requirement, however, does not require that a prisoner be physically confined. *Id.* at 491. For example, a petitioner who is on parole at the time of filing is considered to be in custody, *see Jones v. Cunningham*, 371 U.S. 236, 241-43(1963), as is a petitioner on probation, *see Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005), and a petitioner released on his own recognizance, *see Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 301-02 (1984) (pending retrial). Custody requires a significant restraint on the petitioner's liberty.

The parties agree that Wright completed service of his state sentence on September 17, 2016. Docket No. 16 at 7; Docket No. 28 at 25. In his Petition, Wright avers that, at the time the *pro se* petition was filed on February 27, 2018, Wright was still in the State's custody because he was subject to state probation and parole as a result of the 2009 conviction. Docket No. 28 at 25. He therefore argues that he satisfied the "in custody" requirement of 28 U.S.C. § 2254 when he filed the Petition. *Id.*; *see Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (holding that "in custody" status is satisfied for jurisdictional purposes even when the person is no longer in prison but remains on parole as a result of the conviction he is challenging). In his opposition, Respondent denies such contention, stating that Wright's sentence, including any terms of parole or probation, expired on September 17, 2016. Docket No. 28 at 25-30. Respondent thus denies that Wright was "in custody" at the time he filed his Petition and argues that the Petition should be dismissed on that ground. Because Wright did not deny this contention or otherwise provide evidence that Wright was on parole or probation on the 2009 conviction at the time he filed the instant Petition in February 2018, the Court must accept as true Respondent's statement to the contrary. *See Phillips*, 451 F.2d at 919.

Wright contends, however, that he meets the "in custody" requirement because he "remains subject to collateral consequences as a result of his illegal prosecution and conviction."

-8-

But the Ninth Circuit has consistently held that "merely being subject to a sex offender registry requirement does not satisfy the 'in custody' requirement after the original [sex offense] conviction has expired." *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001); *see also McNab v. Kok*, 170 F.3d 1246 (9th Cir. 1999) (Oregon sex offender registration law does not place sufficient restraints on convicts to constitute custody).

Nonetheless, the Ninth Circuit has held that the "in custody" requirement is met where the habeas petition may be construed as a challenge to the petitioner's current confinement as enhanced by the expired conviction. *See, e.g.*, *Brock v. Weston*, 31 F.3d 887, 890-91(9th Cir. 1994) (the Ninth Circuit, applying *Maleng*, held that a habeas petitioner civilly confined under Washington's Sexually Violent Predator Act ("SVPA") met the "in custody" requirement for purposes of challenging his expired criminal conviction if the district court determined that the expired conviction served as a predicate for his current commitment). In *Zichko v. Idaho*, 247 F.3d 1015 (9th Cir. 2001), the prisoner was convicted of failing to register as a sex offender where the registration requirement was triggered by a prior rape conviction for which the sentence was already complete. While in custody for failing to register, the petitioner filed a federal habeas petition challenging his rape conviction, and the Ninth Circuit found that a habeas petitioner is "in custody" for purposes of challenging an earlier, expired rape conviction when he is incarcerated for failing to comply with a state sex offender registration law because the earlier rape conviction 'is a necessary predicate' to the failure to register charge. *Id.* at 1019-1020. The appellate court concluded that because the previous offense was "positively and demonstrably related" to the offense for which he was presently in custody on a non-expired state conviction, there was jurisdiction to entertain the petition. *Id.* at 1020.

Wright notes in his Petition that "[h]e is presently the subject of a federal prosecution in Tennessee for failing to register as a sex offender." *See United States v. Wright*, Case No. 1:17-cr-00112-HSM (E.D. Tenn.). A review of that case docket indicates that Wright pled guilty on

February 14, 2018, to one count of failure to register as a sex offender.[1] *Id*. at Docket No. 39. Judgment was rendered on March 5, 2019, and Wright was sentenced to time served and five years of supervised release. *Id.* at Docket No. 66. Even assuming that Wright may be considered currently in custody,[2] it appears that the proper procedure for Wright to challenge his current federal custody would be a motion filed in the Eastern District of Tennessee pursuant to 28 U.S.C. § 2255, challenging the final judgment entered in that case. *See* 28 U.S.C. § 2254(a) (mandating that a petitioner seeking relief under § 2254 must be not only "in custody," but in custody "pursuant to the judgment of a State court"); 28 U.S.C. § 2255(a) (requiring that a petitioner in federal custody must attack the federal judgment under which he is in custody); *Brock*, 31 F.3d at 889-90 (holding that petitioner was no longer in custody under expired sexual assault conviction for the purpose of a habeas petition but could satisfy the "in custody" requirement of § 2254 based on his current civil confinement pursuant to a state court judgment under the Washington Sexually Violent Predators Act). Accordingly, *Zichko*, which involved a state prisoner who was currently in custody on a non-expired state court conviction, does not apply in Wright's case.

For these reasons, Wright fails to establish that he meets the "in custody" requirement of 28 U.S.C. § 2254. Because the requirement is jurisdictional, *see Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010) (The "'in custody' requirement is jurisdictional and therefore, 'it is the first

---

[1] This Court takes judicial notice of the record in Wright's Tennessee case. Judicial notice is "[a] court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." Black's Law Dictionary (10th ed. 2014); see *also Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1051 n. 3 (9th Cir. 2005) ("Materials from a proceeding in another tribunal are appropriate for judicial notice.") (internal quotation marks and citation omitted).

[2] The Ninth Circuit has held that a defendant who has "not served his term of supervised release" is "in custody" for purposes of federal habeas jurisdiction. *United States v. Monreal*, 301 F.3d 1127, 1132 (9th Cir. 2002). Nonetheless, as discussed above, Wright may not validly challenge an expired state conviction by way of 28 U.S.C. § 2254 merely because he is in custody in another jurisdiction on federal charges.

question we must consider.'") (citation omitted), Wright's Petition must be dismissed with prejudice.

V. CONCLUSION AND ORDER

Wright is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the First Amended Petition for Writ of Habeas Corpus at Docket No. 16 is **DISMISSED WITH PREJUDICE** for failure to satisfy the "in custody" requirement of 28 U.S.C. § 2254.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 8, 2019.

                                              /s/ James K. Singleton, Jr.
                                              JAMES K. SINGLETON, JR.
                                              Senior United States District Judge